**Dale F. COVINGTON, Jr., et al.,
Respondents,**

v.

**James F. PRITCHETT, Appellant.**

**No. C1-88-266.**

Court of Appeals of Minnesota.

Aug. 30, 1988.

Keith Edward Ekstrom, David L. Soucy, Richard A. Saliterman Law Firm, Minneapolis, for respondents.

David Gronbeck, Hagberg & Gronbeck, Minneapolis, for appellant.

Heard, considered, and decided by WOZNIAK, C.J., and FOLEY and NORTON, JJ.

## OPINION

WOZNIAK, Chief Judge.

This is an appeal from an order and judgment canceling a contract for deed between appellant James Pritchett and respondents Dale and Linda Covington. Pritchett contends the trial court erred in failing to allow him to recover funds paid to cover contract payments after the Covingtons' default and also erred in failing to allow recovery of funds equaling the reasonable rental value of the property. We affirm.

### FACTS

In 1980, Pritchett and his wife purchased a home from John and Rosemary Rawson pursuant to a contract for deed. They purchased the property for $90,000, paid $18,000 at closing, and agreed to pay the remaining $72,000 balance through monthly installments of $635.

In February 1984, the Covingtons were attempting to sell their home. Pritchett proposed to trade the Covingtons' home for the home he purchased by contract for deed from the Rawsons. The Covingtons' down payment to Pritchett consisted of $3,000 cash and $10,000 in equity from the Covingtons' home. A $7,000 balance of equity attributed to Pritchett's home remained.

The terms of the contract for deed provided that the Covingtons agreed to pay the monthly installments on the underlying contract for deed and to pay the remaining $7,000 balance. The method of paying the $7,000 balance is the root of the difficulties between the parties.

One portion of the contract for deed provides that the $7,000 "shall be paid in full on October 15, 1984." However, additional contract language provides that payment shall be made as follows:

In monthly installments of $____ per month or more at the option of the buyers, including interest at the rate of 13% per annum, computation on unpaid balances. Interest shall run from the date hereof. The first payment shall be due and payable on ____, 1984, and subsequent payments shall be due and payable on the ____ day of each succeeding month. * * * The entire unpaid balance of this contract for deed shall be due and payable in full no later than August 15, 1987.

The Covingtons testified that they believed it would take six months to sell Pritchett's house, and the contract lan-

guage was drafted to permit a balloon payment in October if the house was sold, but permit an installment payment plan if the house was not sold. They claim this provision is the reason the dates and the amount of the installment payments were left blank.

Pritchett, however, understood the agreement to preclude any option for installment payments. He refused the Covingtons' attempt to commence installment payments after they were unable to sell the house. The Covingtons continued to make the $635 monthly payments under the Rawson contract for deed, but did not make any payments on the $7,000 balance.

In March 1985, Pritchett served the Covingtons with a notice of cancellation of the contract for deed. The Covingtons wrote to Pritchett the same day proposing a method to pay the $7,000 through installments, but Pritchett did not answer the letter. In April 1985, the Covingtons served a summons and complaint upon Pritchett, alleging breach of contract, unjust enrichment, and that the notice of cancellation was void for failure to list a 90–day period to cure the default pursuant to Minn.Stat. § 559.21, subd. 6 (1986). They also moved for injunctive relief to enjoin enforcement of the cancellation of the contract for deed.

The trial court granted a temporary injunction prohibiting cancellation of the contract. The court ruled that the notice was invalid because of the improper time period to cure the default and because the terms in the contract for deed were ambiguous.

Pritchett subsequently served the Covingtons with a second notice of cancellation of the contract for deed. In July, a second judge upheld the previous injunction and requested that the parties reach a settlement, advice they should have heeded. The parties were unable to reach a settlement, and the Covingtons continued to make the monthly payments to the Rawsons pursuant to the underlying contract for deed.

In January 1986, the Covingtons withheld the $635 payment, and testified that this was to get Pritchett's "attention." La-ter that month, they contacted the Rawsons to resume payments pursuant to the underlying contract, but Mr. Rawson refused to accept further payments. Pritchett also refused to accept any further monthly payments. In March 1986, the Rawsons served a notice of cancellation of contract for deed on both parties. Pritchett cured the default. The Covingtons testified that at this time Pritchett denied their offer to quitclaim the property back to him for a release of all claims.

In September 1986, Pritchett's motion to lift the temporary injunction was denied. In January 1987, the Covingtons found a buyer for the house and offered to transfer the net proceeds to Pritchett. However, Pritchett did not approve the sale, and the proposed purchase failed. In May 1987, the Covingtons moved off the property, and filed a quit claim deed to convey their interest in the property to Pritchett. They understood that they forfeited the $26,335 paid on the property, but testified they were forced to give up any claim to the property because neither vendor would accept contract payments and because they could not refinance or sell the property.

In June 1987, the trial court finally lifted the 1985 injunction, canceled the contract for deed, and awarded Pritchett all right, title, and interest in the property. The court also dismissed the parties' respective claims and counterclaims for monetary damages. The trial court found that Pritchett did not make reasonable efforts to negotiate a monthly installment amount under the contract and that the amounts paid by the Covingtons since February 1984 constituted an equitable return for their occupancy of the property. The trial court noted the lengthy and convoluted procedural history, the Covingtons' repeated attempts to fulfill the contract's ambiguous provisions, and ruled that both sides must share the burden of the transaction.

## ISSUE

Did the trial court err in canceling the contract for deed and denying recovery of additional damages?

## ANALYSIS

The scope of review on an appeal from an order denying a new trial or amended findings includes each issue properly submitted as error in the post-trial motion. *Rein v. Town of Spring Lake,* 275 Minn. 79, 82, 145 N.W.2d 537, 540 (1966), *reh'g denied* (Minn. Nov. 1, 1966). The denial of a motion for a new trial will not be reversed unless the trial court abused its discretion. *Templin v. Crestliner, Inc.,* 263 Minn. 149, 151, 116 N.W.2d 178, 180 (1962). Pritchett contends the trial court abused its discretion in failing to award him monetary damages for the amounts spent to cure the Covingtons' default and in failing to award damages for the reasonable rental value of the property.

Among other remedies, a vendor may cancel a contract for deed by initiating an action for judicial termination or by giving statutory notice under Minn.Stat. § 559.21 (1986). *Kosbau v. Dress,* 400 N.W.2d 106, 108 (Minn.Ct.App.1987).

The doctrine of election of remedies applies when a party adopts two or more inconsistent remedies, and is designed to prevent double redress for a single wrong. *First National Bank v. Flynn,* 190 Minn. 102, 106–07, 250 N.W. 806, 808 (1933). If a contract for deed is canceled either by notice or through judicial action, to prevent a double recovery, the vendor is barred from recovering payments under the contract or recovering other damages for breach of the contract. *Wayzata Enterprises, Inc. v. Herman,* 268 Minn. 117, 119, 128 N.W.2d 156, 158 (1964). The vendor is bound by the election of remedies doctrine if the action has been pursued to a determinative conclusion, the vendor has procured advantage from his or her actions, or if the vendee has been subjected to injury. *Kosbau,* 400 N.W.2d at 110 (citing *First National Bank,* 190 Minn. at 107, 250 N.W. at 808).

The record clearly demonstrates that Pritchett elected to cancel the contract. Pritchett served two notices of cancellation of the contract for deed on the Covingtons and moved to have the injunction lifted on more than one occasion. Moreover, Pritch-ett refused to accept further contract payments after the Covingtons withheld payment in January 1986, apparently for the purpose of precluding any waiver of the pending cancellation of the contract.

While continued installment payments under a contract for deed are required during the pendency of an injunction pursuant to Minn.Stat. § 559.211, the trial court only required the Covingtons to post a $500 cost bond. There is no evidence in the record that Pritchett moved to obtain a guarantee of continued payments or escrow of the funds due under the contract for deed during the time the injunction was in force.

Under *Kosbau,* we find that Pritchett has pursued the matter to a determinative conclusion by serving a notice of cancellation on two occasions, moving to lift the injunction, refusing to accept further contract payments, refusing to accept the Covingtons' settlement offers, refusing to allow the sale of the property, and by forcing the Covingtons to file a quit claim deed forfeiting their interest in the property. Pritchett has procured advantage from his actions since he received over $26,000 in payments from the Covingtons.

Finally, the Covingtons have suffered because they were forced to forfeit their equity in the property, have been left homeless, and have been forced to incur substantial attorney fees. Under the factors recited in *Kosbau,* Pritchett has elected the remedy of cancellation of the contract for deed.

As demonstrated by the two notices of cancellation and the attempts to lift the injunction, Pritchett initially sought to cancel the contract. His November 1986 answer to the Covingtons' complaint sought only cancellation of the contract or, in the alternative, payments under the contract. However, at the trial and post-trial hearing, Pritchett also sought compensation for the reasonable rental value of the home. The trial court thus had the option of canceling the contract or granting Pritchett's claim for damages for breach of contract.

After hearing testimony and examining the evidence, the trial court simply appears to have determined that cancellation of the contract provided the most equitable remedy given the facts of the case. Given Pritchett's repeated attempts to cancel the contract for deed, his contribution to the default, the difficulty and delay in settling the matter, and the significant amount of equity forfeited by the Covingtons, we find that the trial court did not abuse its discretion in limiting the remedy to cancellation of the contract. Because the contract for deed was canceled by the trial court, Pritchett thus is barred from recovering payments due under the contract. *Wayzata*, 268 Minn. at 119, 128 N.W.2d at 158.

Pritchett additionally seeks to recover reasonable rent for the time the Covingtons resided at the property, and in particular seeks rent for the 16 to 17–month period the Covingtons remained at the property without making any payments on the contract for deed. He seeks rent under an unjust enrichment theory, claiming it was inequitable for the Covingtons to remain on the property for free and enrich themselves at his expense.

A vendor may not recover rent from a vendee under an unjust enrichment theory following cancellation of a contract for deed. Collection of rent generally is termed as a non-cancellation remedy, and is permitted when the vendor elects a remedy such as specific performance. *See Brady v. Wardin*, 412 N.W.2d 763 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Nov. 18, 1987).

Even if the unjust enrichment theory were applicable, we find no moral wrongdoing or inequitable result to justify recovery of rent. The Covingtons' attempts to resume contract payments were denied. Further, the procedural delays and delay in recovery of the property are attributable in large part to Pritchett's unreasonable bargaining position and the fact that he used four different attorneys throughout the proceedings. As stated, there is no evidence in the record that Pritchett moved to have the installment payments due under the contract for deed placed in escrow during the injunction pursuant to Minn.Stat. § 559.211. After a potential sale was denied, they quitclaimed their property interest and immediately moved off the property. The $26,335 equity they contributed to the home more than covers the reasonable rental value of the home for the duration of their occupation.

Pritchett additionally argues that the trial court abused its discretion in finding that he failed to make reasonable efforts to negotiate a monthly installment amount so that the contract provisions could be fulfilled. The record indicates that the Covingtons first offered to pay $1,000 down with monthly payments of $125, but Pritchett responded with a notice of cancellation. After receipt of the notice, the Covingtons proposed a second payment plan which Pritchett answered with a counter offer. Negotiations then tailed off, but Pritchett refused to accept the Covingtons' contract payments after their default and did not accept their proposed sale. The trial court was in the best position to weigh the parties' testimony and examine the evidence relating to the contract negotiations. The trial court did not abuse its discretion in finding Pritchett failed to negotiate in a reasonable manner.

## DECISION

The trial court did not err in canceling the contract for deed or in denying the recovery of additional damages.

Affirmed.